**VENABLE LLP**
BELINDA M. VEGA (California SBN 208236)
*bmvega@venable.com*
JONATHAN L. KO (California SBN 321827)
*jlko@venable.com*
MATTHEW L. RABER (California SBN 360339)
*mlraber@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

*Attorneys for Plaintiff JOSEPH EMMANUEL GAXIOLA*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JOSEPH EMMANUEL GAXIOLA,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; SALINAS VALLEY STATE PRISON; and PLEASANT VALLEY STATE PRISON,

Defendants.

Case No. 3:23-cv-02196-WHO

**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. William H. Orrick
Hearing Date: December 22, 2025
Complaint Filed: May 5, 2023

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Pursuant to the Civil Minutes filed December 22, 2025 following the Hearing on Motion for Summary Judgment, Mr. Gaxiola submits the following supplemental brief on two issues:

1. The applicability of *Rucker v. Trent*, No. C 11-4312 YGR PR, 2012 WL 4677741 (N.D. Cal. Sept. 30, 2012) (Dkt. 57 at 16); and
2. Exhibit C of the Supplemental Declaration of Dawn Lorey (Dkt. 59-2 at 13-27) ("Lorey Ex. C").

**1. *Rucker v. Trent* is Distinguishable; *Bonner v. Lewis* Controls**

*Rucker v. Trent*, No. C 11-4312 YGR PR, 2012 WL 4677741 (N.D. Cal. Sept. 30, 2012) is distinguishable from the present case both factually and in procedural posture.

In *Rucker*, the complaint raised scant facts and was dismissed under Rule 12(b)(6). *See* Declaration of Jonathan L. Ko ("Ko Decl."), Ex. 1 at 3 ("Statement of Claim"). The complaint alleged that defendants determined that plaintiff "maintains sufficient mobility and physical ability to maintain unimpeded access to programs." *Rucker*, 2012 WL 4677741, at *1. Because of this, defendants denied plaintiff's request for a lower bunk assignment. *Id.* at *1 ("request for a lower bunk accommodation was denied"). The Court ruled that plaintiff did not allege defendants "*discriminated* against him on the basis of his disability." *Id.* at *5 (emphasis in original). In support of this statement, the *Rucker* Court cited *Bonner v. Lewis*, 857 F.2d 559 (9th Cir.1988). *Rucker*, 2012 WL 4677741, at *5.

In *Bonner*, the Court explained that discrimination could occur through a "prison official's refusal to provide qualified interpreter services" to a deaf inmate. *Bonner*, 857 F.2d at 563 (denying defendant's motion for summary judgment where fact issues existed as to whether deaf inmate had access to "adequate communication" despite lack of interpreter services).[1] Thus, *Bonner* stands for the proposition that a case should survive summary judgment where there is a fact issue as to whether "defendants' refusal to provide [disability] services" causes an inmate to be unable to access the same benefits enjoyed by other inmates. *Bonner*, 857 5.2d at 563 ("Consideration of the

[1] Although *Bonner* discussed Section 504 of the Rehabilitation Act and *Rucker* discussed the Americans with Disabilities Act (and both claims are raised in the instant case), the two statutes are functionally identical for purposes of analyzing discrimination. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) ("Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act.").

fourth element [discrimination], whether the prison official's refusal to provide qualified interpreter services impermissibly discriminated against Bonner, raises other genuine issues of material fact. Is Bonner able to communicate effectively without the use of a qualified interpreter?").

Here, the record contains ample evidence of and raises fact issues regarding discrimination against Mr. Gaxiola on the basis of his disability. As in *Bonner*, Mr. Gaxiola has a disability (deafness in *Bonner*; seizures, vision impairment, and mobility impairment here), Defendants have denied reasonable accommodations (interpreter services in *Bonner*; ADA-accessible cell, glove, radio here), and as a result of the denial of accommodations, Mr. Gaxiola cannot access the benefits permitted to all inmates (adequate communication in *Bonner*; safe housing, safe mobility, and access to radio here). Dkt. 58 at 11-17. Further, Mr. Gaxiola has been discriminated against by having his cane removed due to his inability to wear a vest (due to risk of heat-induced seizure) and he has been removed from class for wearing prescription glasses. Dkt. 58 at 17-19. And Defendant was on notice of the need for each accommodation, as exemplified by Mr. Gaxiola's multiple hospital trips due to falls in his cell, his requests for a glove and radio, and his medical records requiring a cane and glasses. Dkt. 58 at 11-19.

In further contrast to *Rucker*, the *Rucker* Court identified the dispute as an issue of "*inadequate treatment*" because defendant medical provider's position was that plaintiff "maintains sufficient mobility and physical ability to maintain unimpeded access to programs." *Rucker*, 2012 WL 4677741, at *1, 5 (emphasis in original).

Here, Defendant does not dispute Mr. Gaxiola's status as a disabled person. Dkt. 59 at 1 ("for the purposes of summary judgment, Plaintiff's status as a disabled person is not at issue"). And Mr. Gaxiola is not challenging his medical treatment; rather he is challenging the denial of reasonable accommodations (e.g., ADA-accommodated cell, protective glove) that cause him to be discriminated against by being unable to access the same benefits (e.g., safe housing, mobility) afforded to all other inmates because of his disabilities (e.g., seizures, mobility impairment and hand injury).

Moreover, of particular significance here is the fact that Defendant categorically refers to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

ADA-accommodated cells as "ADA wheelchair cells" and classifies inmates based strictly on whether they require a wheelchair, thus inherently discriminating against inmates like Mr. Gaxiola with other serious medical disorders—i.e., seizures and vision impairment—who require reasonable safe housing accommodations for safety reasons but are not coded for a wheelchair. *See* Dkt. 57 at 3-4. As such, unlike in *Rucker*, there is a genuine issue of fact as to whether Defendant's refusal to accommodate Mr. Gaxiola's disabilities, and, critically, the risks of injury associated with such disabilities, constitutes discrimination "*on the basis* of his disability." *Rucker*, 2012 WL 4677741, at *5 (emphasis added). And just like in *Bonner*, Mr. Gaxiola's claims raise "genuine issues of material fact" such as whether he can be safely housed in a non-ADA accommodated cell, given the seizures he has suffered in his cell. *Bonner*, 857 5.2d at 563; Dkt. 58 at 2-3. For these reasons, *Rucker* is easily distinguishable.

The Ninth Circuit has made clear that "failure to provide reasonable accommodation can constitute discrimination" under the ADA and the Rehabilitation Act. *Weldeyohannes v. Washington*, No. 24-3821, 2025 WL 3685608, at *4 (9th Cir. Dec. 19, 2025) (denying defendant's motion for summary judgment where issues of fact existed regarding whether mobility-impaired inmate was provided reasonable accommodation). In *Weldeyohannes*, the plaintiff alleged that prison officials failed to investigate his disability status and denied accommodation for his mobility impairment. *Id.* at *2 ("Weldeyohannes was not provided with a wheelchair van or special transport vehicle that would accommodate his wheelchair . . . Weldeyohannes told at least one prison official involved in his transport that he was unable to board the regular transport bus").

Similarly here, Defendant failed to provide appropriate housing accommodation for Mr. Gaxiola despite multiple seizures requiring trips to the hospital and requests for a different cell. Dkt. 58 at 2-3. Defendant also failed to investigate Mr. Gaxiola's vision impairment before removing him from class and punishing him for wearing prescription glasses. Dkt. 58 at 18-19.

Both *Weldeyohannes* and *Bonner* support Mr. Gaxiola's opposition to the motion for summary judgment, while *Rucker*'s finding of insufficient allegation of discrimination based on a single page of *pro se* handwritten facts is not applicable. *See* Ex. 1 at 3. *Rucker*'s analysis of discrimination relies on *Bonner*, thus the Court should look to *Bonner* for its holding that summary

judgment should be denied because there are issues of fact as to whether Defendant's refusal to provide disability accommodations causes Mr. Gaxiola to be discriminated against on the basis that he cannot access benefits such as safe housing and programming due to his disabilities.

**2. Lorey Exhibit C Does Not Show Reasonable Accommodation**

Lorey Ex. C (Dkt. 59-2 at 13-27) does not support Defendant's argument that Mr. Gaxiola could have ordered his own protective glove. Defendant cites Lorey Ex. C to argue that there are "38 different types of gloves currently available for sale" to inmates. Dkt. 59 at 4. However, the gloves in Lorey Ex. C fall into three categories: thin plastic gloves for medical examinations (Dkt. 59-2 at 14-16, 20, 22, 23, 25), unpadded cut-resistant gloves for use with knives (Dkt. 59-2 at 16-17, 25), and heat-resistant oven mitts and gloves (Dkt. 59-2 at 17-26). None of these are suitable padded protective gloves that can be used with a cane, either because they are unpadded, or they do not provide sufficient dexterity or grip to hold a cane, or both. Defendant appears to concede this, admitting that "whether or not any of the gloves available for sale at that time would have met Plaintiff's needs, however, is unknowable." Dkt. 59 at 4. But Defendant's argument for summary judgment fails because there is a genuine dispute about the material facts of the denial of a glove.

Mr. Gaxiola was denied a reasonable accommodation (a padded protective glove) and as a result was denied access to reasonable assisted mobility, which is a benefit available to all inmates. Dkt. 58 at 18-20, 24; Dkt. 58-1 at 56 ("He is asking for the glove which he thinks will help his R hand pain"), 96 ("We do not give wheelchair gloves for cane users"). Lorey Ex. C does not show that any alternative was available, either as of the date that the screenshots were taken, or at the time Mr. Gaxiola and his doctor requested a glove.

Based on the foregoing, as well as the briefing and argument, Mr. Gaxiola respectfully requests the Court deny Defendant's Motion for Summary Judgment.

DATE: January 8, 2026

VENABLE LLP

By: /s/ *Jonathan L. Ko*
Belinda M. Vega
Jonathan L. Ko

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Matthew L. Raber

*Attorneys for Plaintiff Joseph Emmanuel Gaxiola*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900